**David Paul COTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Donald Clay SKELTON, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3–84–125–CR, 3–84–133–CR.**

Court of Appeals of Texas, Austin.

Nov. 21, 1984.

Charles O. Grigson, Austin, for appellants.

Ronald Earle, Dist. Atty.; David Boatright, Asst. Dist. Atty., Austin, for appellee.

Before POWERS and GAMMAGE, JJ., and KEITH,* J. (Retired).

POWERS, Justice.

The trial-court judgments, rendered following a bench trial on pleas of not guilty, convict appellants David P. Cote and Donald P. Skelton of cocaine possession. Tex. Rev.Civ.Stat.Ann. art. 4476–15, § 4.04(a), (b)(1); § 4.01(b)(2); § 4.02(b)(3)(D) (1976); Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.04(a), (b), (c); 4.01(b)(2); 4.02(b)(3)(D) (1976). *Crisp v. State*, 643 S.W.2d 487 (Tex.App.1982), aff'd, 661 S.W.2d 944 (Tex. Cr.App.1983). Each appellant was sentenced to a prison term of three years, which was probated, and a fine of $300.00. We will affirm the judgments of the trial court.

In their respective appeals, the appellants raise two identical grounds of error: (1) the trial court erred when it overruled a motion to suppress evidence of the cocaine, it having been discovered by reason of an unlawful warrantless arrest; and (2) the evidence was insufficient to support a finding of guilty because there was no evidence that either knew the substance was cocaine or that either had exercised control over it. Before turning to these contentions, we shall summarize the evidence bearing thereon.

---

* Keith, Justice (Retired), Ninth Court of Appeals, sitting by assignment. See Art. 1812, as amended.

## SUMMARY OF THE EVIDENCE

The arresting officer testified that he was a uniformed city police officer on duty the night of appellants' arrest. Around 10:35 p.m., he had gotten out of his police automobile and was walking through the parking lot of a shopping center. The retail establishments in the center were closed, save for a couple of restaurants and bars, or nightclubs. The center was, according to the officer, a place where "[w]e have more trouble ... at night" than in the daylight hours. By more "trouble," he meant "[n]arcotics, disturbances, public intoxication, assaults, killings, any number of things."

Continuing, the officer testified that the parking lot was lighted and he was able to see clearly. He saw a van about thirty feet away. It was legally parked in a section of the lot used by patrons of one of the bars. The dome light of the van was shining. He saw in the front seat of the van two individuals. The driver (Skelton) "was leaning over towards the middle of the van, and he had his hand close to his face in a position that looked like he was snorting cocaine." The driver then "passed [an] object that was in his hand to the ... passenger [Cote] who did a similar thing with the object," that is, the passenger took the small object and "put it to his face and leaned over, also." On examination by defense counsel, the officer stated that he saw clearly the two individuals in the van and responded "That's correct," when asked:

> And as you approached the van ... the driver appeared to be taking something to his nose.

Seeing the movements of the two individuals, the officer walked toward the right-front quarter of the van. When the officer "was a couple of steps" from the passenger side, the passenger said something to the driver, who then turned off the dome light. The passenger concurrently "sat up and put his left hand down," which was the hand that he had "had near his face."

Based upon these observations, when the officer was "getting right close to the door" on the passenger side of the van, he formed the opinion that "they were snorting cocaine and [he] was going to arrest them."

The officer testified that on arriving at the door of the van he ordered the passenger

> ... to get out of the van and put his hands behind his back. He had both hands in fists in front.... I opened the door, ordered him to get out of the van, put his hands behind his back. He had his hands in fists. I got his right hand behind his back, and he continued holding his left hand in a fist in front of him. I told him to put it behind his back. He dropped something out of his left hand, and it hit on the ground, and he kicked it under the van, and I handcuffed him.

The officer then arrested the driver as well. The object kicked under the van by Cote was shown to be an open vial containing a substance stipulated to be cocaine. The lid of the vial was found between the two front seats of the van.

### UNLAWFUL ARREST

■ A police officer is statutorily authorized to "arrest an offender without a warrant for any offense committed in his presence or within his view." Tex.Code Cr.P. Ann. art. 14.01 (1977). Whether effectuated with or without a warrant, however, an arrest must be predicated upon "probable cause" in order to be constitutionally valid. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

■ To determine whether there exists in a particular case the predicate of "probable cause," one must appraise the material facts and circumstances and evaluate whether the basis for the arrest was no more than an inarticulate hunch, suspicion, or good-faith belief, held by the arresting officer, that an offense had been committed; or, on the other hand, whether the arrest, at the moment it was made, was based upon observations or reasonably trustworthy information sufficient to warrant a man of reasonable prudence in believing that an offense had been committed for which an arrest was authorized. The latter is said to constitute "probable cause." The former does not. *Id.; Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949); *Muniz v. State,* 672 S.W.2d 804, 806 (Tex.Cr.App.1984); *Hawkins v. State,* 660 S.W.2d 65, 70 (Tex.Cr.App.1983); *Britton v. State,* 578 S.W.2d 685, 689–90 (Tex. Cr.App.1979) (opinion on State's motion for rehearing). "Probable cause" is thus a conclusory inference drawn from an appraisal of the material facts and circumstances. Several principles govern the reasoning process by which the conclusion of "probable cause" may be reached.

The factual possibilities surrounding a warrantless arrest are, of course, practically limitless. Because of this, reviewing courts normally resort to analogy to previous circumstances where probable cause was or was not inferred. We shall do so here.

In *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court inferred probable cause from the following circumstances shown by the evidence. The officer stopped the defendant's automobile in a routine, nighttime, driver's license check. He asked for the defendant's license, shining his flashlight inside the defendant's car. The officer saw fall from the defendant's hand an opaque, green party balloon, knotted at the tip. Based upon the officer's previous experience in drug arrests, and discussions with fellow officers, he was aware that narcotics frequently were packaged in such balloons, and while the defendant searched for his license, the officer shifted position to obtain a better view. He noticed in the open glove compartment an open bag of similar balloons, loose white powder, and small plastic vials. The defendant stated that he did not have a driver's license in his possession and complied with the officer's request that he get out of the automobile. When he did so, the officer picked up the green

balloon, which seemed to contain a powdery substance within the tied-off portion. The officer arrested the defendant. The Supreme Court inferred probable cause from the facts and circumstances.

In *Miller v. State,* 667 S.W.2d 773, 777 (Tex.Cr.App.1984), the Court quoted and adopted the following principles stated by the Supreme Court in *Texas v. Brown, supra:*

> As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States....* Moreover, our observation in *United States v. Cortez,* 449 U.S. 411 [101 S.Ct. 690, 66 L.Ed.2d 621] ... (1981), regarding "particularized suspicion," is equally applicable to the probable cause requirement:[1]
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

■ Appellants suggest in the present cases that the movements observed by the arresting officer were as logically consistent with innocent behavior (for example, the inhalation of medicine by nasal spray) as with criminal activity, and so they were in the sense that anything is possible. But we are cautioned against "library analysis" and enjoined to assign meaning to the officer's observations in the light in which he viewed them, under all the facts and circumstances, as one "versed in the field of law enforcement."[2] *Miller v. State, supra; United States v. Cortez, supra; Texas v. Brown, supra.* Specifically, we may not require a showing that the officer's belief of criminal activity be "more likely true than false." *Texas v. Brown, supra; Miller v. State, supra.*

■ We hold the following evidence would warrant a man of reasonable prudence in believing that appellants were inhaling cocaine:

1. The parking lot was in an area of high crime activity, including "narcotics."

2. Skelton leaned over with his hands to his face, holding a small object in his hand which he then passed to Cote who used it in the same manner.

3. To one versed in law enforcement, as shown by the arresting officer's testimony of his previous experience and police-academy training, it is known that cocaine is often taken by leaning over and inhaling the powder through the nose. While the officer's training and experience in this regard were shown not to be great, we hold

---

1. The present case does not involve the principle of detention for questioning or other investigation, for the arresting officer testified that he had decided to arrest the appellants for possession of a controlled substance, a decision made at the moment he arrived at the door of the van. The State insists that the officer's observations preceding that point were sufficient to constitute probable cause for the arrest that followed immediately.

2. The arresting officer's experience and training were described in his testimony basically as follows: He had, on two or three previous occasions, "seen somebody that looks like they're snorting cocaine." He made an arrest for possession of cocaine on one of those occasions. He was, in addition, trained in police academy that a user of cocaine does so by leaning over, putting the container next to his face, and "snorts it up" his nose, "among other things" not described by the officer.

them sufficient to be placed in the scales as giving particular meaning to the officer's observation. *Cf., Miller v. State, supra,* at 777–78.

4. On seeing the approaching officer, Cote sat up, dropped the hand holding the small object, and said something to Skelton, who turned off the dome light that had previously illuminated the cab. One may infer that appellants' movements in this regard were in reaction to seeing the approaching police officer, who testified that he was a uniformed officer on duty at the time and that the parking lot was sufficiently lighted for one to see clearly. In our view, appellants' furtive reactions to the approaching officer gave a distinctly *culpable* meaning to their previous movements in the front seat of the van—movements that had, by their being consistent with cocaine inhalation, first excited the officer's suspicion and led him to remove his doubt by further investigation. The furtive reaction may *also* have an innocent explanation, but credulity is not a virtue in any reasonably prudent police officer, nor does the law require it when he assigns meaning to all the facts and circumstances he observes, and draws therefrom an interpretative conclusion assisted by whatever special training and experience he possesses. Appellants' attempt to conceal was dramatically inconsistent with any non-culpable inference that might have been drawn from their previous movements in the cab, even to an untrained observer. We hold that a reasonably prudent and cautious officer would have been justified in believing that his earlier suspicion of cocaine possession and use had been confirmed by appellants' efforts at concealment.

We overrule appellants' first ground of error.

### SUFFICIENCY OF THE EVIDENCE

Appellants contend there is no evidence that they knew the substance was cocaine and no evidence that either of them had exercised control over it. The legal issue is whether a rational trier of fact could find beyond a reasonable doubt, from the evidence, that the two appellants each possessed the substance knowing it was contraband, the evidence being that described heretofore.

The evidence shows that each appellant handled the object which came to rest in Cote's fist, and that he kicked the object under the van on his arrest. The object was shown to be a vial containing cocaine. The top to the vial was found on the console between the passenger and driver's seats. We hold the evidence sufficient to sustain the proposition that each was aware of the vial and had, indeed, exercised physical control over it. *See, e.g., Tatom v. State,* 555 S.W.2d 459, 461 (Tex.Cr.App. 1977); *Hazel v. State,* 534 S.W.2d 698, 703 (Tex.Cr.App.1976); *Cf. Ramirez v. State,* 365 S.W.2d 791, 792 (Tex.Cr.App.1963); *Jones v. State,* 371 S.W.2d 883, 884 (Tex. Cr.App.1963). The evidence justifies as well the implied finding that each knew the substance in the vial was cocaine. They were shown to have used the substance in a manner in which cocaine is inhaled; their movements were furtive on being discovered. These acts and Cote's kicking the vial under the van on being arrested suggest in the strongest terms that he knew it was contraband. Appellants' cooperative movements with the vial, as described by the police officer, are not consistent with a theory that either was ignorant of the vial's contents, but suggest instead a joint enterprise in intentionally using the contents of the vial in a manner consistent with the way cocaine is used. We overrule appellants' second ground of error.

Finding no error as assigned, we affirm the judgments of the trial court.